IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

LYNN R. RIOS CAMPBELL

Plaintiff

vs

U.S. DEPARTMENT OF COMMERCE;
HON. PENNY S. PRITZKER,
Secretary of Commerce, in her official capacity

Defendants

CIVIL 15-1189CCC

**STATEMENT OF REASONS IN SUPPORT OF AMENDED ORDER GRANTING MOTION TO DISMISS PURSUANT TO RULE 12(B)(6) (D.E. 45) AND AMENDED JUDGMENT (D.E. 46)**

After defendants' Motion for Summary Judgment (d.e. 19) was considered as a Motion to Dismiss for failure to state a plausible claim under Fed. R. Civ. P. 12(b)(6), the Court entered on March 29, 2018 its Order (d.e. 42)[1] dismissing the Second Amended Complaint . Judgment was entered that same date (d.e. 43).[2] The Court noted that a Statement of Reasons would follow. This is said Statement of Reasons.

We briefly reiterate the standard applicable when reviewing motions to dismiss. To survive such a motion, a complaint must comport with the minimal requirements set forth in Federal Rule of Civil Procedure 8(a)(2) as interpreted by the Supreme Court in Ashcroft v. Iqbal, 556 U.S. 662, 129 S.Ct. 1937 (2009). Although Rule 8(a)(2) requires only "a short plain statement of the claim showing that the pleader is entitled to relief," Iqbal requires "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 129 S.Ct. at 1949,

---

[1] An Amended Order *Nunc Pro Tunc* was entered on May 2, 2018 (see d.e. 45).

[2] An Amended Judgment *Nunc Pro Tunc* was entered on May 2, 2018 (see d.e. 46).

commonly referred to as an inference of liability.  This involves a two-step process.  First, conclusory statements must be disregarded, and, second, the remaining factual assertions must, when read together, make a plausible, not merely possible, case for relief.  Id. at 1949-50.  Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, will not suffice.  Id.  The complaint must be dismissed "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct . . . ."  Id. at 1950.

The Second Amended Complaint filed by plaintiff Lynn R. Ríos Campbell on December 23, 2015 (d.e. 15-1) invokes the provisions of Title VII of the Civil Rights Act of 1964.  It alleges that plaintiff was subjected to a hostile work environment on the basis of his national origin or that he was subjected to retaliatory harassment (Second Amended Complaint, paragraphs 1 and 2).  Rios-Campbell seeks compensatory damages arising from the national origin discrimination to which he was allegedly subjected.  Although not included as defendants in the caption of the Second Amended Complaint, the thrust of plaintiff's allegations are aimed at his first-level supervisor, defendant Harold Radonski and his second-level supervisor, co-defendant Tracy Dunn, at the Southeast Enforcement Division of the Office of Legal Enforcement of the National Marine Fisheries (NMFS) in Puerto Rico.  Both Radonski and Dunn are identified at paragraphs 14 and 15 of the Second Amended Complaint being as defendants of "American national origin."

The list of general allegations at paragraph 18(a) through (u)[1] is devoid of any factual contents. The following are examples of allegations which do not point to actions by any specific defendant that could even be taken as intimating misconduct on their part based on a discriminatory animus:

A. Made persistent attempts to belittle and undermine plaintiff's work and his involvement in investigation in the Caribbean.

B. Unnecessarily criticized and scrutinized plaintiff.

E. Ignored plaintiff's emails and phone calls, and refused to support his investigative work.

F. Made accusations again plaintiff without fundamental or facts to support the claims.

I. Refused to provide plaintiff with a new, working vehicle, even though there was a Truck sitting at a parking lot in San Juan with fewer miles than the 2003 miles Chevy Tahoe driven by him.

J. Refused to provide plaintiff the same office environment as other employees.

K. Treated plaintiff in a rude manner, which has affected his physical and mental health by creating a work atmosphere of stress and anxiety.

M. Exposed plaintiff to a hostile work environment, through Radonsky's actions, who alienated plaintiff and constantly undervalued his work.

O. Constantly undermined plaintiff's professional integrity, repeatedly and unjustifiably questioning several aspects of his work, as if trying to catch him in a lie.

P. Accused plaintiff, via Harold Radonsky, of improper decision-making without factual evidence to support those claims.

Q. Denied opportunities for stimulating and interesting work, contrary to those given to Agent Henline, who was provided opportunities to work with agents from Miami.

    U.    Repeatedly favored Agent Henline over plaintiff, via Radonski's and Dunn's actions.

Paragraph 19 purportedly provides specific instances of discrimination and harassment which one would expect would fill the factual vacuum of the preceding paragraph 18(A) through (U) allegations. The specific instances of discrimination and harassment announced in paragraph 19 are described at paragraphs 20 through 111, pages 6 though 26.

Having reviewed these, the Court finds that plaintiff Ríos Campbell contrived a log of gripes and disjointed events, spanning six (6) years, mostly based on emails exchanged at the workplace. At best, they point to disagreements, brushes or tensions in Ríos Campbell's relationship with supervisors Radonski and Dunn and with non-party agent Kenneth Henline at the Office of Legal Enforcement (OLE) of the National Marine Fisheries (NMF) in Puerto Rico. These are scattered and fragmented allegations of actions or inactions imputed to plaintiff's two supervisors. Despite their numerosity, none furnish a factual basis that would allow the Court to draw a reasonable inference that defendants discriminated against plaintiff because of his national origin: Puerto Rican.

The following are samples of such instances of alleged discrimination and harassment due to national origin set forth in allegations 19 thru 111 of his Second Amended Complaint (d.e. 15-1):

- Ongoing discrepancies from 2007 to 2011 on whether the Aguadilla Field Office or Guaynabo was an Official Duty Station. <u>See</u> allegations 20-22; 53.

- On July 23, 2009, plaintiff Rios emailed Radonski to advise that Hennline had "verbally expressed that he did not like Rios . . . Radonski ignored the email." <u>See</u> allegation 23.

- On August 12, 2009, Rios sent a purchase request for a government cellphone for approval to Radonski, who ignored it. On August 18, 2009, Rios contacted Radonski on the phone requesting verbal approval to purchase the cellphone at an AT&T store. On January 22, 2010, Radonski emailed plaintiff stating that he assumed plaintiff received the approved purchase request for a new phone but Radonski never produced evidence that the approved purchase request was sent. Plaintiff purchased the cellphone through eBay on August 2009 "from his personal funds" and not government funds as he never received an approved purchase request even though he had sent it to Radonski. See allegation 25.

- On September 25, 2009, plaintiff received a message from Radonski approving the operational plan for Queen Conch for Agent Henline and Rios did not get a written approval for his Group I investigation. On November 24, 2009, plaintiff sent Radonski an email requesting a signed operational plan for Group I investigation to which Radonski replied "there was no need as it was approved all the way from HQ," even though the document had a line for signature approval. See allegations 26, 30.

- On October 16, 2009, Radonski sent an email to Henline and mistakenly sent it to Rios. Radonski's message demonstrated that Radonski and Henline were working behind Rios' back since there was "talk about Henline heading a project which never included Rios although Henline was working in Rios' AOR (Area Of Responsibility." See allegation 28.

- On January 20, 2010, Radonski sent an email to Rios with regard to property inventory, requesting that Rios load up all the office equipment and drive to San Juan for Deputy Special Agent in Charge Dunn to conduct an inventory . . . An email from Rios to Radonski the day after asking if his email meant that Rios had to take all of the office inventory to San Juan in his GOV was ignored by Radonski. See allegation 33.

- On March 22, 2010, Rios requested from Radonski the status of inquiries with regard to threats made over the internet against him. No response was received. See allegation 48.

- "On April 27, 2010, Radonski denied Rios a change of schedule previously approved. Plaintiff had requested a change of day off within the changed scheduled due to the fact that Rios' wife needed to be driven to her psychiatrist . . . . Plaintiff's email was sent to Radonski on April 27, 2010, for change of day off with the request. Rios did not anticipate any problem. Radonski ordered Rios to submit an SF-71 form for the day taken off without approval. Rios routinely changed his schedule to work weekends

CIVIL 15-1189CCC                           6

> to satisfy the needs and mission of the NMFS, and is one of the few agents in OLE SED who does this, yet he was penalized for making a decision as a result of an exigent circumstance." Allegation 52.

- "On August 19, 2010, Radonski sends email advising he will be visiting Puerto Rico to conduct mid-term performance review; he states he will not have much time in Puerto Rico, knowing that Rios had requested an inspection of his office. Plaintiff perceived Radonski did not want to drive to Aguadilla to inspect office and witness the dire needs for improvements. Radonski just visits San Juan." Allegation 55.

- "On October 12, 2010, Ríos sent an email to Radonski advising that he would need to relocate to an alternate site due to his unhealthy working condition. Rios requested for approval to telework from alternate site. Radonski replied stating that he and DSAC Dunn were very concerned, when Rios had previously asked Radonski on several times to inspect the office as it needed remodeling but he was ignored." Allegation 59.

- "On January 12, 2011, plaintiff received email from NOAA SED Secretary Donna Evans with attached PDF of last year's telework agreement reflecting episodic use of residence for telework agreement. The previous day, plaintiff had requested an updated telework agreement from Radonski and DSAC Dunn and NOAA SED Secretary Donna Evans replied when the request that was done to her personally was sent on December 16, 2010." Allegation 74.

- "On May 13, 2011, plaintiff received an email from Radonski stating that he was "[s]lammed with work" and could not "put together all documents needed for AFF request." Radonski several times throughout the course of the year stated that he did not have time for plaintiff." Allegation 94.

- "On May 19, 2011, conducted Mid Term Performance review via phone with plaintiff, even though he is supposed to conduct said proceedings in a face-to-face meeting. Radonski started the conversation with the following statement: "I do not want you to think that I am trying to hammer you" Further into the conversation with Radonski he accuses Rios and states "You need to stop badmouthing Henline." Plaintiff sent an email to Radonski expressing dissatisfaction with the deficiencies and suggestions provided by Radonski in Midterm performance document and requested that Radonski provide clear written guidance as to what was expected from plaintiff. Radonski ignored plaintiff's request and did not respond." Allegation 96.

The multiple instances listed in allegations 19 to 111 do not refer to any factual circumstances that could plausibly establish or even intimate a nexus or a causal relationship between the defendants' conduct, as reflected in those communications, and discrimination against plaintiff by reason of his national origin.

While the Court has highlighted these particular allegations as demonstrative of the insufficiency of plaintiff's allegations regarding defendants' discriminatory animus towards him, all of the allegations of the Second Amended Complaint have been considered in passing upon the plausibility of his discrimination claim. "The make-or-break standard . . . is that the combined allegations, taken as true, must state a plausible, not a merely conceivable, case for relief." Sepulveda-Villarini v. Department of Education of Puerto Rico, 628 F.3d 25, 29 (1st Cir. 2010). Applying this standard, the Court finds that the factual allegations in the complaint, taken as true, do not allow it to draw the reasonable inference that defendants incurred in disparate and discriminatory treatment towards plaintiff due to his national origin. The facts alleged in the averments of the Second Amended Complaint, read as a whole, do not establish a causal connection between actions or inactions imputed to defendants and the national origin discrimination which plaintiff claims to have suffered as a result of such conduct.

As in Iqbal, the allegations of the Second Amended Complaint do not show that defendants' conduct by acts or omissions, listed as instances of discrimination, were due to plaintiff's national origin. Id., at p. 1952. ("To prevail on that theory, the complaint must contain facts plausibly showing that petitioners purposefully adopted a policy of classifying post-September-11

detainees as 'of high interest' **because of** their race, religion, or national origin." . . . "the complaint does not show, or even intimate, that petitioners purposefully housed detainees in the ADMAX SHU **due to** their race, religion, or national origin.") (Emphasis ours.)

The Court also notes that detrimental comments attributed to supervisors Radonski and Dunn at allegation 112, regarding their distrust of plaintiff because he was not an American, have not been linked in any manner as a motivating factor to any of the events narrated in the preceding 92 allegations, proffered as specific instances of discrimination and harassment against plaintiff.

Finally, in allegation 122 of his third cause of action plaintiff claims that he "was retaliated against because he both engaged in protected conduct as he lodged several complaints to the Office of Special Counsel and the Office of Inspector General against defendants Radonski and Dunn, and Agent Henline for their involvement in an investigation on an alleged assault on Agent Henline." Title VII makes it unlawful for an employer to take materially adverse action against an employee "because he has opposed any practice made an unlawful employment practice by this subchapter." 42 U.S.C. § 2000e-3(a). To state a cause of action under this portion of the statute, the pleading must contain plausible allegations indicating that the plaintiff opposed a practice prohibited by Title VII and that he suffered an adverse employment action as a result of such opposition. But nowhere in his Second Amended Complaint does plaintiff allege that the retaliation stemmed from his engaging in protected activity. The investigation about which he complained, conducted by the agency on an assault on Agent Henline, did not involve an unlawful

CIVIL 15-1189CCC						9

employment practice under the Title VII retaliation statute.

    For these reasons, the Court dismissed plaintiff's complaint for failure to state a claim under Fed. R. Civ. P. 12(b)(6).

    SO ORDERED.

    At San Juan, Puerto Rico, on May 2, 2018.

S/CARMEN CONSUELO CEREZO<br>
United States District Judge