| | |
|---|---|
| LYNN R. RIOS CAMPBELL | |
| Plaintiff | CIVIL 15-1189CCC |
| vs | |
| U.S. DEPARTMENT OF COMMERCE; HON. PENNY S. PRITZKER, Secretary of Commerce, in her official capacity | |
| Defendants | |

## ORDER AND OPINION

On December 23, 2015, plaintiff Lynn R. Rios Campbell filed a Second Amended Complaint (d.e. 15-1) against defendants U.S. Department of Commerce and the Secretary of Commerce alleging violations of Title VII of the Civil Rights Act of 1964. On May 6, 2016, defendants filed a Motion for Summary Judgment (**d.e. 19**). On May 2, 2018, the Court granted the motion and entered a judgment of dismissal under the standard set forth at Fed. R. Civ. P. 12(b)(6). Plaintiff appealed.

On June 13, 2019, the First Circuit Court of Appeal vacated the Court's judgment and "remanded to the district court for consideration of the defendants' motion under the summary judgment standard" (d.e. 51). The Court now considers defendants' Motion for Summary Judgment (d.e. 19) in accordance with the First Circuit's ruling.

## BACKGROUND

The Second Amended Complaint filed by plaintiff Lynn R. Ríos Campbell on December 23, 2015 (d.e. 15-1) invokes the provisions of Title VII of the Civil Rights Act of 1964. It alleges that plaintiff was subjected to denial of promotion, disparate treatment, and a hostile work environment on the basis of his national origin, and that he was subject to retaliation for engaging in protected conduct (d.e. 15, para. 1-2).

Although not included as defendants in the caption of the Second Amended Complaint, the thrust of plaintiff's allegations are aimed at his first-level supervisor, Harold Radonski, and his second-level supervisor, Tracy Dunn ("supervisors"), at the Southeast Enforcement Division of the Office of Legal Enforcement of the National Marine Fisheries (NMFS) in Puerto Rico.

## STANDARD OF REVIEW

The standard applicable to summary judgment motions has been summarized by the First Circuit Court of Appeals:

> Summary judgment is appropriate when there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Cox v. Hainey, 391 F.3d 25, 29 (1st Cir. 2004). We look to the pleadings, depositions,

answers to interrogatories, admissions on file, and any affidavits in making the determination. Thompson [v. Coca-Cola Co.], 522 F.3d [168,] at 175 [(1st Cir. 2008)]. A dispute is genuine if "the evidence about the fact is such that a reasonable jury could resolve the point in favor of the non-moving party." Id. (quoting Sánchez v. Alvarado, 101 F.3d 223, 227 (1st Cir. 1996)) (internal quotation mark omitted). A fact is material if it has potential to determine the outcome of the litigation. Maymí v. P.R. Ports Auth., 515 F.3d 20, 25 (1st Cir. 2008).

Once a properly supported motion has been presented, where a nonmovant bears the burden of proof on an issue, the nonmovant must point to competent evidence and specific facts to defeat summary judgment. Tropigas de P.R., Inc. v. Certain Underwriters at Lloyd's of London, 637 F.3d 53, 56 (1st Cir. 2011). The evidence proffered must be "significantly probative of specific facts," Pérez v. Volvo Car Corp., 247 F. 3d 303, 317 (1st Cir. 2001), and the "mere existence of a scintilla of evidence" in support of the nonmovant's position is insufficient, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed. 2d 202 (1986).

Johnson v. University of Puerto Rico, 714 F.3d 48, 52 (1st Cir. 2013).


## STATEMENT OF UNDISPUTED MATERIAL FACTS

1. The Office of Law Enforcement ("OLE") is a part of the National Oceanic and Atmospheric Administration, which is an agency of the U.S. Department of Commerce. The U.S. Department of Commerce is part of the executive branch of the federal government.

2. OLE's special agents and enforcement officers "ensure compliance with the nation's marine resource laws and take enforcement action when these laws are violated." (http://www.nmfs.noaa.gov/ole/about/what_we_do.html). OLE is comprised of several geographic divisions, one of which is the Southeast Enforcement Division ("SED").

3. Plaintiff (national origin: 50% Puerto Rican and 50% American) is a Criminal Investigator/Special Agent, ZA-0181-III, in the Aguadilla Field Office of OLE in Puerto Rico. Plaintiff has held this position since 2003.

4. Plaintiff's current first-level supervisor is Ronald Messa, who is acting in the position of Assistant Special Agent in Charge ("ASAC"). His second-level supervisor is Harold "Jeff" Radonski, who is acting in the position of Deputy Special Agent in Charge ("DSAC"). However, during much of the time material to the instant complaint, Mr. Radonksi was an ASAC in the SED and Plaintiff's first-level supervisor. Likewise, during much of the time material to the underlying complaint, Tracy Dunn was the DSAC of the SED and Plaintiff's second-level supervisor.

5. When Plaintiff joined the Agency in 2003, his original assignment was to the Guaynabo Field Office in Guaynabo, Puerto Rico, in the San Juan metropolitan area. However, Plaintiff lived in Aguadilla, Puerto Rico and had a family there. Plaintiff was able to secure a free workspace in a

building maintained by the United States Coast Guard, and requested to use that office as his duty station instead of relocating to Guaynabo. This request was granted and Plaintiff began working from what became the Aguadilla Field Office.

6. In March 2010, plaintiff twice contacted supervisor Radonski regarding issues with his Aguadilla office space. Supervisor Radonski replied that the agency was focused on other priorities and that it did not seem the issue would be addressed quickly.

7. In October 2010, plaintiff informed his supervisors that he could no longer work in his Aguadilla office space due to mold. His request to work from home was granted.

8. In January and May 2011, supervisor Radonski requested that plaintiff look for new free office space.

9. On August 17, 2011, plaintiff contacted the EEOC to begin the process of filing a complaint alleging discrimination based on national origin.

10. On August 29, 2011, Plaintiff requested that supervisor Radonski review and provide guidance on his promotion application package prior to formal submission. The deadline for final submissions was September 2, 2011. Supervisor Radonski did not review the package.

11. On March 7, 2012, plaintiff learned he had been denied the promotion.

## DISCUSSION

### I. <u>Timeliness</u>

Before a federal employee may sue his employer under Title VII, he must contact the Equal Employment Opportunity Commission (EEOC) "within 45 days of the matter alleged to be discriminatory." 29 C.F.R. Section 1614.105(a)(1). In the context of disparate treatment and retaliation, Title VII precludes recovery for discrete acts of discrimination that occurred outside this time period, or for continuing violations that concluded outside this time period. <u>Nat'l R.R. Passenger Corp. v. Morgan</u>, 536 U.S. 101, 105 (2002). However, acts outside this time period may still be considered in the context of a hostile work environment claim.

Plaintiff first contacted the EEOC on August 17, 2011. Forty-five days prior to August 17, 2011, falls on July 3, 2011. Accordingly, all allegations as to discrete actions taking place before July 3, 2011, and ongoing violations with the most recent incident taking place before July 3, 2011, are excluded as untimely for the purposes of plaintiff's disparate treatment and retaliation claims.

## II. Failure to Promote Claim

On September 2, 2011, plaintiff applied for a promotion. On March 7, 2012, his application was denied. Plaintiff alleges that this denial was issued due to his national origin. To establish a prima facie case of "failure to promote" discrimination based on national origin, plaintiff must show that: (1) he belongs to a protected class, (2) he qualified for the position in question, (3) he was not hired; and (4) the job was given to someone outside the protected group with roughly equivalent or lesser qualifications. Rios v. Rumsfeld, 323 F. Supp. 2d 267, 274 (D.P.R. 2004) (citing Benoit v. Tech. Mfg. Corp., 331 F.3d 166, 173 (1st Cir. 2003)).

It is undisputed that plaintiff is a member of a protected class due to his Puerto Rican national origin.

As to the second factor, the parties disagree as to whether plaintiff was qualified for the promotion he applied for in September 2011. Defendants allege that plaintiff was not qualified because of failure to meet the fundamental "advanced proficiency in report writing" qualification; failure to demonstrate the required minimum of five proficiencies; and lack of diversity in the case examples he submitted. Plaintiff responds that denying him a promotion on the basis of his writing skills is in itself national origin discrimination, as English is his second

language; that he met at least five proficiencies; and that his case examples demonstrated appropriate diversity. The Court finds that plaintiff has alleged sufficient facts regarding his qualification for the position.

The third element is undisputed, as the parties agree that plaintiff did not receive the promotion he applied for.

Plaintiff's claim fails when he reaches the fourth element. Plaintiff fails to identify any individual who was promoted in this application cycle, let alone an individual outside the protected group and with similar qualifications. In fact, the only fellow applicant plaintiff identified was of American national origin and was also denied (d.e. 21-12, p. 37). The exhibits submitted by defendants show that of the eight promotion applications submitted by agents in his cycle, four were granted and four were denied, including plaintiff (d.e. 21-9, p. 75).

As plaintiff has not alleged that a similarly or less qualified individual outside the protected class was promoted, he has failed to make a prima facie case of "failure to promote" discrimination. Accordingly, defendants' Motion for Summary Judgment (**d.e. 19**) is GRANTED as to the failure to promote claim.

### III. **Disparate Treatment Claims**

A. Prima Facie Case

In order to establish a prima facie case of disparate treatment, plaintiff must demonstrate that: (1) he is a member of a protected class; (2) he suffered a loss or harm to a term or condition of his employment, i.e., an adverse employment action; and (3) he was treated differently from similarly situated individuals not within his protected class. See Espinal v. Nat'l Grid NE Holdings 2, LLC,693 F.3d 31 (1st Cir. 2012); Prescott v. Higgins, 538 F.3d 32, 41 (1st Cir. 2008).

*1. Plaintiff is a member of a protected class*

The first element of the prima facie test is undisputed: plaintiff is a member of a protected class due to his national origin as Puerto Rican.

*2. Plaintiff experienced an adverse employment action*

An adverse employment action "typically involves discrete changes in the terms of employment, such as 'hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing significant change in benefits.'" Morales–Vallellanes v. Potter, 605 F.3d 27, 35 (1st Cir.2010) (quoting Burlington Indus., Inc. v. Ellerth, 524 U.S. 742, 761 (1998)). To be adverse, an employment action "must materially change the conditions of plaintiffs' employ." Id. (quoting Gu v.

Bos. Police Dep't, 312 F.3d 6, 14 (1st Cir.2002) (internal quotation marks omitted)).

The actions which have been timely raised by plaintiff include supervisor Radonski's failure to reply to emails from plaintiff requesting guidance (d.e. 15, para.102, 105, 107); failure to conduct an inspection of plaintiff's moldy office (para. 103); imposition of a tight deadline on plaintiff's submission of a report (para. 104); instruction to plaintiff to fly to Florida for a performance review (para. 110); failure to include plaintiff's name in a news release (para. 111); failure to provided plaintiff with a newer work vehicle (para. 18); and chastisement of plaintiff for failure to copy his supervisor on an email (para. 108). None of the above constitute adverse employment actions because they do not "materially change the terms and conditions of employment." See Morales-Vallellanes v. Potter, 605 F.3d 27, 36 (1st Cir. 2010) ("Minor disruptions in the workplace, including petty slights, minor annoyances, and simple lack of good manners, fail to qualify" as adverse employment actions) (internal citations and quotations omitted).

However, plaintiff does raise two timely claims that may constitute adverse employment actions: denial of an appropriate workspace and

supervisor Radonski's August 2011 failure to review plaintiff's promotion application package to provide feedback prior to its final submission.

### 3. Plaintiff was treated differently from similarly situated individuals

As to the third element, plaintiff identifies one individual, Kenneth Henline, as similarly situated as to the workspace claim. Defendants concede that Mr. Henline worked in a similar role for the agency in Puerto Rico and was provided an adequate workspace in San Juan. Plaintiff also identifies two individuals, Special Agent Blackburn and Special Agent O'Malley, who were eligible for promotion at the same time as plaintiff in August 2011 and who are outside the protected group. However, plaintiff does not allege or present evidence as to whether their promotional application packages were reviewed by supervisor Radonski.

The Court shall assume, *arguendo*, that plaintiff has established a prima facie case of discrimination as to both timely claims.

### B. Legitimate, Nondiscriminatory Reason

Once the plaintiff makes out a prima facie case, the burden of production shifts to the defendant to produce evidence that the adverse employment actions were taken for a "legitimate, nondiscriminatory reason." McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973).

Defendants allege that plaintiff was not provided with an appropriate workspace due to budget and due to plaintiff's desire to work from the Aguadilla area. According to defendants, plaintiff was originally supposed to work from the San Juan office, where Agent Henline was located. However, because plaintiff preferred to work in the Aguadilla area, where the agency had no office space, plaintiff was permitted to work in a cost-free space managed by the Coast Guard. When it was discovered that the space contained mold and needed extensive renovation, defendants allege they did not have the budgetary resources to renovate the office or to pay for a new office space. Accordingly, plaintiff was permitted to work from home, relocate to Agent Henline's office space in San Juan, or find a new cost-free work space. He was unable to find a new cost-free work space and chose to work from home.

As to the promotional package, defendants allege that plaintiff's promotional package was not reviewed to provide feedback because it was provided too close the to the September 2, 2011 final submission deadline. Plaintiff submitted the package on August 29, 2011, four days before the submission deadline. Defendants allege that supervisor Radonski did not review any packages submitted that close to the final deadline.

The Court finds that defendants have provided legitimate, nondiscriminatory reasons for these adverse employment actions.

C. Pretext

Once a legitimate, nondiscriminatory reason has been provided, the burden of persuasion falls back upon the plaintiff to show by a preponderance of the evidence that the reasons provided by the defendant are merely a pretext for unlawful discrimination. St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 515 (1993). "To meet this burden, the plaintiff must prove not only that the reason articulated by the employer was a sham, but also that its true reason was plaintiff's race or national origin." Rodriguez-Cuervos v. Wal-Mart Stores, Inc., 181 F.3d 15, 19 (1st Cir. 1999).

Plaintiff has failed to raise facts that could meet this burden. As to his workplace, plaintiff does not dispute that his working station was in Aguadilla, rather than San Juan, at his request. He agrees that his office needed renovation due to mold. However, he does not allege that defendants did in fact have the budgetary resources to buy or renovate his office space. As to the promotional package, plaintiff does not allege or provide any evidence that the promotional packages of any other agents

were reviewed by supervisor Radonski, let alone that promotional packages submitted August 29, 2011 or later were reviewed.

Even accepting his alleged facts as true and construing all inferences in his favor, plaintiff cannot show by the preponderance of the evidence that defendants' reasons are merely a pretext for unlawful discrimination as to national origin. Accordingly, defendants' Motion for Summary Judgment (**d.e. 19**) is GRANTED as to the disparate impact claims.


## IV. Retaliation

Title VII makes it unlawful for an employer to take materially adverse action against an employee "because he has opposed any practice made an unlawful employment practice by this subchapter." 42 U.S.C. § 2000e-3(a). Such action is referred to as "retaliation".

### A. Prima Facie Case

To state a cause of action, a plaintiff must allege that: (1) that he undertook protected conduct; (2) that his employer took a material adverse action against him; and (3) that a causal nexus exists between elements one and two. See Medina–Rivera v. MVM Inc., 713 F.3d 132, 139 (2013).

### 1. Plaintiff undertook protected conduct

On July 28, 2010, plaintiff filed a complaint with the Merit Systems Protection Board in which the alleged that his employer was discriminating against him on the basis of national origin (d.e. 34-4). Accordingly, plaintiff first engaged in protected conduct on July 28, 2010. He next engaged in protected activity by contacting the EEOC on August 17, 2011.

### 2. Employer took an adverse employment action

An adverse employment action "typically involves discrete changes in the terms of employment, such as 'hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing significant change in benefits.'" Morales–Vallellanes v. Potter, 605 F.3d 27, 35 (1st Cir.2010) (quoting Burlington Indus., Inc. v. Ellerth, 524 U.S. 742, 761 (1998)). To be adverse, an employment action "must materially change the conditions of plaintiffs' employ." Id. (quoting Gu v. Bos. Police Dep't, 312 F.3d 6, 14 (1st Cir.2002) (internal quotation marks omitted)).

As described at Section II and III.A.2. of this Opinion and Order, supra, three of plaintiff's timely claims constitute adverse employment actions: failure to provide an appropriate workspace, failure to review a promotion package, and denial of promotion.

### 3. Causal Nexus

As to workspace, plaintiff has failed to allege a causal nexus with his protected conduct. The undisputed facts show that plaintiff worked in Aguadilla, rather than San Juan, at his request. Plaintiff worked in free office space provided by the Coast Guard from 2004 until April 2010, when mold was discovered. Throughout that time, plaintiff alleges defendants did not allocate any fund towards maintenance or operation. (d.e. 35-1, para. 43). The undisputed facts also reflect that as early as March 26, 2010, plaintiff had been informed that there were no funds to assist in relocating or renovating the Aguadilla office; plaintiff and supervisor Radnonski had several email communications about this situation prior to plaintiff's first protected conduct on July 28, 2010, and plaintiff was informed that the matter would not be addressed any time soon due to budgetary constraints. Plaintiff has failed to present any facts explaining how the preexisting failure to provide appropriate office space converted into retaliation once plaintiff engaged in protected conduct, and therefore has not alleged a causal nexus.

As to the review of the promotion package and denial promotion, the best evidence of a causal nexus is the timeline: plaintiff began communicating with the EEOC on August 17, 2011; submitted his

promotion package for supervisor review on August 29, 2011; applied for the promotion on September 2, 2011; and was denied the promotion on March 7, 2012.

The Court finds that plaintiff has made out a prima facie case of retaliation as to review of the promotion package and denial of promotion, but not as to inadequate workspace.

## B. Legitimate Nondiscriminatory Reason

"Once the plaintiff makes out [a] prima facie case, the burden shifts to the defendant to articulate a legitimate, non-retaliatory explanation for its actions." Planadeball v. Wyndham Vacation Resorts, Inc., 793 F.3d 169, 175 (1st Cir. 2015).

For the same reasons discussed at Section III.B. of this Opinion and Order, *supra*, the Court finds that defendants have set forth a non-retaliatory explanation for the failure to review the promotion package: defendants state that no promotion packages submitted on the same or a later date as plaintiff's were reviewed due to proximity to the deadline.

As to denial of promotion, defendants argue that plaintiff was not qualified for the new position due to his failure to meet the fundamental "advanced proficiency in report writing" qualification; failure to demonstrate the required minimum of five proficiencies; and lack of

diversity in the case examples he submitted.

Plaintiff argues that denying him a promotion based on his English language writing skills is actually a form of national origin discrimination in itself. Plaintiff argues that he may not fairly be compared with other employees for whom English is a first language. While language requirements may implicate national origin discrimination, plaintiff did not raise this claim in his Second Amended Complaint, and the Court will not rule on whether the advanced written fluency required by defendants is in fact necessary for effective performance of the position. Instead, the Court relies on the other two reasons offered by defendants, and finds that these are  legitimate, non-retaliatory reasons to deny the promotion.

C. Pretext

Once the defendant carries produces a legitimate, non-retaliatory explanation, the burden shifts to the plaintiff to show that this explanation is a pretext for unlawful retaliation. Planadeball v. Wyndham Vacation Resorts, Inc., 793 F.3d 169, 175 (1st Cir. 2015).

The only evidence supporting a finding of pretext as to review of plaintiff's promotional package is timing. However, temporal proximity alone is not sufficient to raise an inference of pretext that would defeat summary judgment. Id. at 179. Accordingly, plaintiff has failed to raise a

genuine dispute of material fact as to the promotional package claim.

As to the denial of promotion, plaintiff alleges that contrary to defendants' explanation, he did meet five of the seven proficiencies and provided diverse case examples. As whether plaintiff met the eligibility requirements for promotion is a genuine dispute of material fact, defendants' Motion for Summary Judgment (**d.e. 19**) is DENIED as to retaliation.

## V. Hostile Work Environment Claim

In the context of a Title VII claim, an "objectively hostile" work environment exists when the workplace is "permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment". Harris v. Forklift Systems Inc., 510 U.S. 17, 21 (1993) (internal citations omitted); Civil Rights Act of 1964, § 701 et seq., 42 U.S.C.A. § 2000e et seq. "A hostile work environment generally is not created by a "mere offensive utterance," Id. at 23; nor does it arise from "simple teasing, offhand comments, and isolated incidents." Faragher v. City of Boca Raton, 524 U.S. 775, 788 (1998); see also Koseiris v. Rhode Island, 331 F.3d 207 (1st Cir. 2003).

The determination of a hostile working environment cannot be "a mathematically precise test" and "can be determined only by looking at all the circumstances", including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance. Harris v. Forklift Sys., Inc., 510 U.S. 17, 23 (1993).

Plaintiff's Second Amended Complaint contains one paragraph alleging "intimidation, ridicule, or insult" related to plaintiff's national origin:

> On several occasions along the dates that are mentioned from averment 21 to averment 111 Harold Randonski and Tracy Dunn made detrimental comments to plaintiff as to the fact that he is a Puertorrican that because he's from Puerto Rico he can't speak English as American do, on various occasions Harold Radonski and Tracy Dunn told plaintiffs that he was not an American and as such they could not trust him as an Agent and that they didn't know how the United States Government could retain a Puertorrican as an Agent.

(d.e. 15, para. 112). The dates referred to by plaintiff range from June 4, 2005 to September, 2011, a period of more than six years.

In the Report on Investigation conducted by the EEOC, two additional alleged quotes are identified by plaintiff:

> [I[n April 2009, in response to a request from Plaintiff

> that the FBI conduct an investigation on the island of
> Puerto Rico, Mr. Radonski said, "I'm not going to
> allow those people down there to mess up this
> investigation." (Exh. 1 at ROI 226). Plaintiff states
> that he perceived Mr. Radonski to be referring to
> Puerto Ricans in a derogatory manner and
> insinuating that Puerto Ricans could not conduct an
> investigation without botching it. (Exh. 1 at ROI 226).
> Likewise, Plaintiff alleges that in June 2009, DSAC
> Dunn stated, "I will never work for a man of that kind"
> in reference to an African American colleague. (Exh.
> 1 at ROI 226).

(d.e. 21-2, p. 129).

In contrast to these allegations, in his deposition, plaintiff stated that

he never heard supervisor Radonski make any comments about plaintiff's

national origin:

> Q. Did you ever witness Mr. Radonski making any
> derogatory comments about your national origin?
> A. I did not witness it.

(d.e. 21-12, p. 30). Rather, plaintiff testified that he read a document

where a coworker stated that he had heard supervisors making "racially

motivated comments" (d.e. 21-12, p. 30). However, plaintiff states that he

gained access to this document through discovery after filing his

discrimination complaint. (d.e. 21-12, p. 30).

Altogether, plaintiff alleges that he heard supervisors make two

comments about "those people" and "a man of that kind" in 2009; that he

heard supervisors make comments about plaintiff's English language skills and trustworthiness due to his nationality on "several" or "various" occasions between June 2005 and September 2011; and that he read a document stating that a coworker overheard supervisors making derogatory comments about plaintiff.

Accepting all of plaintiff's allegations as true and making all reasonable inferences in his favor, the Court finds that there is a genuine dispute of material fact as to the discriminatory conduct alleged by plaintiff. Accordingly, defendants' Motion for Summary Judgment (**d.e. 19**) is DENIED as to the hostile work environment claim.


## CONCLUSION

For the foregoing reasons, defendant's Motion for Summary Judgment (**d.e. 19**) is GRANTED as to the claims for failure to promote and disparate treatment, and DENIED as to retaliation and hostile working environment.

SO ORDERED.
At San Juan, Puerto Rico, on March 22, 2020.

/s Gustavo A. Gelpi
GUSTAVO A. GELPI
Chief United States District Judge